### WILLING v. LUPIN BUILDING & LOAN ASS'N.

No. 19596.

District Court, E. D. of Pennsylvania.

April 7, 1937.

Thomas J. Minnick, Jr., of Philadelphia, Pa., for plaintiff.

A. L. Shapiro, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

We granted leave to file supplemental briefs in this case, which have now been received.

The action is brought on debt obligations of the defendant to the Commercial National Bank of Philadelphia, of which the plaintiff is receiver. One Louis Ettelson was indebted to the Bank on dis-

counted notes. The defendant Association was indebted to Ettelson on demand notes. Ettelson deposited the notes of the defendant with the Bank as collateral security for his indebtedness to the Bank. This was evidenced by the usual collateral agreement by which all the collateral was pledged for any indebtedness of Ettelson to the Bank. The Bank made a settlement of its claim against Ettelson by accepting of an absolute assignment of the notes of the defendant Association. The Bank then made demand upon the defendant for payment of the note. The Association had a deposit account with the Bank of about $1,800. Answering to the demand made upon it, the Association paid what was due on the notes, less the deposit account of the Association against the Bank, claiming the right to deduct from the claim of the Bank against it the deposit claim due by the Bank, or, in the language of the Brief submitted, to set off the one claim against the other.

The question thus raised is the right of the Association to make this deduction or claim the set-off.

■ An answer to this question is to be found in the principles on which it rests. They are both substantial and procedural. If A holds the note of B and B holds that of A for an equal sum, there would be an injustice in any law which required B to pay his debt to A and yet left the debt of A to B to go unpaid. This is substantive. A would have, however, an undoubted right of action against B which he could assert by suit. B would then be put to any defense he might have. He could not deny the debt but must in some way plead his counterclaim. This is procedural. The legal right of each party is clear enough. Each has a right of action against the other and neither a defense in law to the claim of the other. The law would give judgment in favor of each against the other. The result, however, might be that one would obtain payment; the other not. If A sued B, what would be the plea? The real defense would be payment because the indebtedness of A to B would be the extinguishment of the debt of B to A. It would, however, not be payment in law because, in the stern logic of what we call the common law, B could not be said to have paid A but to have a counterclaim against him. It would, however, in equity be the equivalent of payment and hence payment. It follows

that in those jurisdictions in which equitable defenses are permitted in actions at law the counterclaim might be pleaded as an equitable payment. Such defenses could always be pleaded in actions at law in Pennsylvania. Under the system of pleading which prevailed before the Practice Act of 1915 (Act Pa. May 14, 1915 P.L. 483) and its predecessors, such a defense might be introduced under the plea of "Payment with leave," etc. Drawn out in full, this meant leave to offer facts and circumstances in evidence which were the equitable equivalent of payment. In those jurisdictions, however, in which equitable defenses could not be heard in actions at law, the defense of equitable payment could not be introduced. A defendant was there driven to his bill in equity to restrain the action at law because of the equitable defense. The chancellor upon the hearing of such a bill would enter a decree in accordance with his finding. This was a cumbersome way of reaching the desired result and, moreover, resulted in depriving the parties of the right to a trial by jury. Congress, recognizing this, passed the Act of March 3, 1915 (Jud. Code §§ 274a–274c, 28 U.S.C.A. §§ 397–399), which in effect gives to a defendant with a counterclaim defense the right to plead it in an action against him. When pleaded, it is not necessary to resort to an independent proceeding in equity, but the trial judge, as a chancellor, is to hear and dispose of the defense in limine. The act is general in its provisions, its draftsman not having in mind actions at law in Pennsylvania in which the defense could be heard and determined by a jury, and hence no such statute was needed.

■ The present action is a Pennsylvania case. Ordinarily no court of the United States would have jurisdiction to try it otherwise than because of the diversity of citizenship of the parties. The appellate courts have, however, given effect to the act of Congress (Jud.Code § 24(1), 28 U.S.C.A. § 41(1) which confers jurisdiction upon courts of the United States to determine cases in which "an officer of the United States" is plaintiff. By these rulings we are bound and hence exercise jurisdiction. The rights of the parties are, however, to be adjudged in accordance with the law of Pennsylvania. This court so determined in the case of Binenstock v. Willing, 18 F.Supp. 262, per Kirkpatrick, J., which was affirmed by the Circuit Court

of Appeals for this circuit in an opinion handed down February 2d, 1937, 88 F.(2d) 474, report of which has not as yet been published.

We in consequence hear and determine the case as a Pennsylvania case, and hold that the equitable defense mentioned may be tried as upon a plea of "Payment with leave," etc. This, as we have said, could not be done in what we call common law actions. The state Legislature in consequence passed the Defalcation Act (12 P.S.Pa. § 601). This was a very early act passed before the practice of pleading equitable defenses in actions at law had become firmly established. Under this act, where the parties had had mutual dealings, the account of one might be set off against the account of the other. Hence there was incorporated in the Pennsylvania system of pleading that of the plea of "Set-Off."

Some confusion has arisen from the rulings in the early cases because they were discussed sometimes as arising under the plea of set-off and sometimes under the plea of an equitable payment. Indeed, the two pleas are often thought of and discussed as one. They had the like purpose to admit of a defense which should be admitted. Their only real difference was that the plea of set-off rested upon the Defalcation Act; the plea of payment upon equitable considerations and the practice of the courts. Since the Practice Act of 1915, all such distinctions have been done away with. A counterclaim is a defense and, indeed, may be turned into a reversal of the parties plaintiff and defendant. The pleaded facts take the place of formal pleas. The real question thus becomes, Do the facts here pleaded constitute a defense?

The defendant stands upon the proposition that it is a practical and legal injustice to permit the Bank to enforce payment of a debt due to it by defendant and yet leave a debt due by the Bank to the defendant to go unpaid. The plaintiff stands upon the proposition that all creditors of the Bank should be treated alike and that it is inequitable to pay the defendant in full for a debt due to it by the Bank with the result of compelling other creditors to be content with a less sum.

A test of these conflicting propositions is to reverse the situation. If the defendant was asking for a dividend out of the assets of the Bank, the answer would be forthcoming that there was no debt of the Bank because of the debt owing by the defendant to the Bank. The right of the defendant as a deposit creditor would be determined by the state of the account between it and the Bank. The same rule which would be applied against the defendant must be applied in its favor. What was the state of the account between them as of the date when the Bank failed to meet its obligations?

The general principles which supply us with an answer to this question have been very adequately discussed by Judge Kirkpatrick in the Binenstock Case. They may be somewhat complicated with procedural questions in the instant case. The debt of the defendant was due to Ettelson. With this the Bank had nothing to do. Had Ettelson sued the defendant, the fact that the Bank was indebted to the defendant would have been no defense. The indebtedness of the defendant was in the form of a negotiable instrument. This became the property of the Bank. The Bank was thereafter the creditor of the defendant. The Bank could have brought its action either in its own name or in that of Ettelson to its use. It chose to bring it in its own name. The question then became one of the state of the accounts between the Bank and the defendant.

We see no escape from the conclusion indicated that the defendant may interpose the defense of its counterclaim. Had the Bank brought this action, the defense could have been interposed. All the rights of the receiver are derived from the Bank. The procedural distinctions between a plea of payment with leave, etc., and a plea of set-off have been done away with by the Practice Act of 1915. We are now concerned with only the question of indebtedness.

1. Rule for judgment discharged.

2. Rule to strike off counterclaim defense discharged.