HAMMOND PURE ICE & COAL COMPANY *v.* HEITMAN.

[No. 27,827. Filed March 23, 1943. Rehearing denied April 15, 1943.]

354

*Carl A. Huebner* and *Arnold G. Huebner*, both of Hammond, for appellant.

*Arnold, Degnan, Dohnalek & Goheen* and *Donald C. Gardner*, all of South Bend, for appellee.

SWAIM, J.—The appellee, Elmer W. Heitman, as receiver of the Hammond National Bank and Trust Company, brought an action against the appellant, Hammond Pure Ice and Coal Company, on two Five Hundred Dollar first mortgage real estate bonds. The ice company filed an answer of set-off and a cross-complaint seeking specific performance of a contract it had with the bank for the exchange of said bonds for other bonds held by the ice company. From a judgment in favor of the appellee, both on the complaint and cross-complaint, the appellant has appealed. Two questions are presented: (1) the right of the appellant to specific performance, and (2) the right of the appellant to set off a claim it held against the bank against the receiver's claim on the two bonds.

The two bonds sued on by the receiver were of a series dated March 1, 1928, and payable to the Hammond Bank and Trust Company, Trustee, or bearer, five years after date. These bonds evidenced a loan made by the bank to the ice company. After the loan was made the bank sold the bonds to various customers. In 1930, the ice company desired to pay off $17,000.00 of said loan and to take up a corresponding amount of said bonds but was advised by the bank that the bonds

were held by various purchasers and, therefore, not immediately available. Thereupon the bank and the ice company entered into an agreement whereby the ice company paid to the bank $17,000.00 in cash, was given an equal amount of the mortgage bonds of an issue known as the Hammond M. Walls and Lizzie Walls bonds then held by the bank and was promised that the bank would immediately proceed to acquire the same amount of ice company bonds which it would then exchange for the Walls bonds held by the ice company. Five thousand dollars of the ice company bonds were so acquired by the bank and exchanged with the ice company for a like amount of Walls bonds in accordance with the agreement. On January 2, 1932, the bank was determined to be insolvent and a receiver was appointed therefor. At that time the bank had in its possession three of the ice company's bonds which it owned, certain others which it held in a trust capacity and the two bonds here in suit which it held as collateral on two notes, one of which notes was then past due. The two bonds here in question were held by the receiver as collateral until in 1939 when he acquired ownership thereof on an agreed settlement with the two debtors.

On September 1, 1933, the ice company filed an action in the United States District Court against the then receiver of the Hammond National Bank and Trust Company and against the Hammond National Bank and Trust Company for specific performance of the contract between the bank and the ice company and for damages. In that action the Federal Court found that at the time of its suspension the bank held the two bonds here in question as pledges to secure the indebtedness of the owners of the bonds; that said bonds were still held by the receiver as collateral security for said

indebtedness; that the value of the Walls bonds which the ice company still held was fifty per cent of their face value; and that by reason of the failure of the bank to repurchase the two bonds here in question and certain other bonds and exchange them for the Walls bonds, pursuant to its contract with the ice company, the ice company had sustained damages in the amount of $3,250.00. In that action the court ordered specific performance of the contract as to the ice company bonds which were held and owned by the bank at the time of its suspension; and adjudged and decreed that the ice company was entitled to recover damages in the sum of $3,250.00 as a general claim, on which claim the ice company should receive payments pro rata and equal to the dividends paid to the other general creditors of the bank. There was no appeal from this judgment. Thereafter, and prior to the filing of this action, the ice company received and accepted the sum of $1,543.75 as dividends on its general claim as allowed by the Federal Court judgment.

The claim for specific performance of the appellant's contract with the bank, for the exchange of the ice company bonds for Walls bonds, was presented in the action filed by the appellant in the Federal Court and said claim was there adjudicated and merged in the judgment.

It is said in 30 Am. Jur. § 172, p. 914, "A final judgment rendered by a court of competent jurisdiction on the merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand, and cause of action." It has been many times held by this court that the doctrine of *res adjudicata* embraces not only what was actually determined, but every matter which

the parties could have had litigated in the cause. The judgment in the former case is conclusive and bars a subsequent action if an opportunity was presented to litigate the entire subject-matter in the first action. *Olds* v. *Hitzemann, et al* (1942), 220 Ind. 300, 42 N. E. (2d) 35. The two bonds here in suit were considered in the Federal Court action. If the appellant was entitled to specific performance as to these two bonds his claim therefor should have been presented in that action. The fact that specific performance was not ordered by the Federal Court as to these two bonds amounted to an adjudication against the appellant of the claim to specific performance which it has attempted to again present by its counterclaim in this action.

After the entry of the Federal Court judgment the appellant accepted dividends from the receiver paid upon its general claim as adjudicated and ordered by the Federal Court. The amount of the difference between the value of the Walls bonds and these two ice company bonds was taken into consideration by the Federal Court in determining the amount of the damages awarded to the appellant. If the receiver were now forced to exchange the ice company bonds for the Walls bonds the appellant would be made more than whole and would profit at the expense of the other creditors of the receivership. The appellant cannot now be heard to say that it is entitled to an exchange of the bonds after it has received approximately one-half of the damages found to be due it for the failure of the bank to make such exchange.

The appellant also contends that the trial court erred in not permitting the balance owing on its general claim, as allowed by the Federal Court, to be set-off against the claim of the appellee receiver on said two bonds.

Both parties recognize the rule that in order for one claim to be set off against the other there must be mutuality. The claims must not only be the demands of the same parties but they must be held in the same capacity or character. Vol. I, Watson's Works Practice, § 715 and cases there cited. *Wolcott, Rec.* v. *Pierre* (1935), 100 Ind. App. 16, 188 N. E. 596.

Both parties also recognize the rule that at the time the bank suspended operations and a receiver was appointed the rights of the parties became fixed and the right of either to a set-off is governed by the state of things existing at that moment. *Fox* v. *Dept. of Financial Institutions et al* (1937); 212 Ind. 85, 7 N. E. (2d) 39; 71 A. L. R. 806 Anno.

A claim against an insolvent bank, held and owned by a party at the time of the appointment of a receiver, cannot be set off against a claim which the receiver subsequently acquires against such party. *Butler* v. *Tunnicliffe et al* (1932), 104 Fla. 477, 140 So. 201.

Both parties concede that at the time a receiver was appointed for the bank it was indebted to the ice company; and that such debt constituted such a claim as might be set off against any indebtedness of the ice company then owing to the bank. The appellant insists that since the bank, at the time of its suspension, was the pledgee of the two bonds in question it was the holder of said bonds and as such was entitled, under the Negotiable Instrument Law (§ 19-401, Burns' 1933, § 12868, Baldwin's 1934) to sue on the bonds in its own name and to receive payment thereon; and that, therefore, the appellant was so indebted to the bank on such bonds that such debt was mutual with the debt then due from the bank to the appellant. On

this proposition the appellant cites and relies on the case of *Aab* v. *French* (1926), (Mo. App.), 279 S. W. 435. In that case Aab, the maker of the pledged note in question, and his associates purchased the stock of a corporation from one Stonebraker. As a means of financing the purchase Aab gave his note for $10,000.00 to Stonebraker who put the Aab note up as collateral on a promissory note executed by Stonebraker for the same amount, payable to the Holland Banking Company. The Aab note evidenced the joint debt of Aab and his associates to Stonebraker. For the purpose of providing a fund for the payment of the Aab note, Aab and his associates opened a deposit account with said banking company in the name of one of the associates as trustee. It was recognized by all parties that said account belonged jointly to Aab and his associates.

From time to time deposits were made in this account by the various associates and payments therefrom were made to the bank on the Aab note. At the time such payments were made they were also credited by the bank on the Stonebraker note. At a time when the balance in said account was the exact amount then due on each of the two notes, a check was drawn to the bank for the balance in the account and tendered to the president of the bank for payment of the Aab note. At that time the president of the bank knew the relationship of all of the parties, knew the purpose for which the trustee deposit account had been created and knew that the entire arrangement for the payment of the two notes had been made as a matter of convenience with the consent of all of the parties. The president of the bank, however, asked that the check be held a few days because the Aab and Stonebraker notes had been put up with another bank as collateral.

Before the check in payment of the Aab note was actually accepted by the bank it suspended business and the commissioner of finance took charge thereof for liquidation. The commissioner brought suit on the Aab note and Aab attempted to set off the amount of the deposit account. The Missouri Statute (§ 1292, Statute 1919), provided that "If any two or more persons are mutually indebted in any manner whatsoever, and one of them commence an action against the other, one debt may be set off against the other, although such debts are of a different nature."

The facts in that case present an entirely different question from the facts in the case at bar. There the real owners of the deposit account, under the arrangements and agreements between all the parties, could be considered as the real debtors on the principal note held by the bank. The amount of the deposit account, the balance due on the collateral note and the balance on the principal note were all exactly the same. At the time of the insolvency of the bank there was actually no balance owing to the bank in which its creditors could claim any equitable interest. Aab and his associates were equitably entitled to a set-off. In view of these facts and the broader Missouri statute on set-offs the decision in that case is easily understood. In its opinion, however, the Missouri Court of Appeals made certain broad statements to the effect that the pledgee of a note is a holder in due course to the extent of the principal debt and has such an interest in the pledged note that such indebtedness is mutual with a debt of the bank to the maker of the pledged note.

The appellant also relies on the case of *Willing* v. *Lupin Bldg. & Loan Assn.* (1937), 20 Fed. Supp. 774 and 777. In that case the court wrote two opinions. In the first opinion the court in its statement of

facts said, "The Bank made a settlement of its claim against Ettleson by accepting of an absolute assignment of the notes of the defendant Association." Ettleson was the principal debtor and the notes of the defendant association had been pledged as collateral. In that opinion the court discussed the general principles of set-off and decided that the notes of the association constituted a claim which was mutual with the deposit account of said association. The court said that the pledged note in question became the property of the bank and "The Bank was thereafter the creditor of the defendant." There was no discussion in that opinion of the fact that the note was only held by the bank as collateral.

The statement of the facts in the second opinion disclosed that a conservator was first appointed for said bank; that the conservator in a settlement with the principal debtor accepted an absolute assignment of the pledged notes; that thereafter a receiver was appointed and the association then paid sufficient sums to reduce the amount due upon its notes to the exact amount of its deposit account. In that opinion the court stated that the case presented the question of "whether the defendant is entitled to set off its deposit account in the Bank against its indebtedness to the Bank upon notes held by the latter as collateral security for the indebtedness of a third party in a larger amount." The court then continued, "This question was raised by the prior rules taken by the plaintiff, and this court in the opinion filed April 7, 1937 (20 F. Supp. 774), which held the set-off to be a valid defense to the plaintiff's claim, determined the question in favor of the defendant. To this ruling we adhere, but, in view of the earnest argument of the plaintiff, we will again briefly set forth the reasons which compel our

ruling." After stating the general rules applicable to set-offs and as to the rights of such a pledgee holder, the court said, "It thus appears that so far as the defendant is concerned the Bank held its notes in all respects in its own right and for its own purposes and they were fully enforceable by and payable to it. While Ettleson (the principal debtor) retained an interest in the notes, his interest was entirely separate and distinct from that of the Bank and was one with which the defendant was not concerned. There was, therefore, present in this case that mutuality of obligation which the law requires as a basis for the right of set-off." As the only authority for its conclusion the court cited *Aab* v. *French, supra,* the facts of which, as we have shown, presented an entirely different question.

While we agree with the result reached in *Aab* v. *French, supra,* we are unable to agree with the broad statement made by the court in that case and followed by the court in *Willing* v. *Lupin Bldg. & Loan Assn. supra,* to the effect that the pledgee of a negotiable note has such an interest therein that the maker of such note may set-off against it a debt which he holds against the pledgee.

While it is true that the pledgee of a negotiable instrument may, on default thereon, sue on such pledged instrument in his own name and may also accept payment of such instrument according to its tenor and thereby discharge the instrument, the pledgee is not the full owner of the instrument, for the application of the proceeds is subject to the rights of the pledgor. 8 Am. Jur. § 939, p. 552. The pledgee actually has only a lien on such an instrument to secure the payment of the principal debt. *William* v. *Burgess et al* (1914), 74 W. Va. 623, 82 S. E. 507. As against

the pledgor any unauthorized disposition of the pledged instrument by the pledgee would constitute a conversion thereof. The pledgee is not authorized to accept pay-ment before maturity of a pledged note which is payable on a day certain; he is not authorized to exchange such a pledged instrument for any other security; nor is he authorized to accept in payment and discharge of such a pledged note anything other than the full amount of the cash due thereon. 28 L. R. A. (N. S.) 980 Anno. and cases there cited.

The two bonds here in suit were payable on a day certain in cash and were not due when the bank closed. While the note on which one of these bonds was pledged was due when the bank suspended business, the pledge had not been foreclosed by the bank and if the maker of the principal note had paid the amount then due thereon the receiver would have been compelled to return the pledged bond to the pledgor. At the time the bank suspended it was not the owner of these bonds. It did not hold the claim against the ice company in the same capacity or character in which the ice company held its claim. There was, therefore, no such mutuality as to entitle the ice company to a set-off.

The fact that the bonds were payable to the bank as trustee, or bearer, of course, did not furnish the mutuality necessary to a set-off, where, as here, the bonds were not actually owned by the bank.

Nor did the fact that the receiver later acquired the full beneficial ownership of the two bonds give the appellant a right of set-off. *Woodlawn Federal Savings and Loan Association* v. *Williams* (1939), 237 Ala. 446, 187 So. 177. The notes on which the bonds were pledged were assets of the receivership and subject to the rights and equities of

all of the creditors of the receivership. The acquisition of these bonds by the receiver in a settlement on the notes could not be held to relate back to the time of the appointment of the receiver, and thereby wipe out the intervening rights and equities of the other creditors. The equities would be the same as if the receiver had taken cash or any other asset of the trust and exchanged it for these two bonds. An asset acquired by a receiver for the benefit of all of the creditors may not be applied by one creditor to the reduction of his claim at the expense of the other creditors. *Chipley State Bank* v. *McNeill, Receiver* (1919), 77 Fla. 827, 82 So. 292; *H. & G. L. Coleman* v. *Winters Nat. Bank & Trust Co.* (1934), 48 Ohio App. 98, 192 N. E. 478.

The appellant makes some contention to the effect that the insolvency of the bank is a sufficient reason for invoking the rule of equitable set-off; and that for an equitable set-off strict or complete mutuality is not necessary. It is true that where it has seemed necessary, in order to do equity and to prevent irremediable injustice, our courts have permitted an equitable set-off in some cases where the facts did not warrant a statutory set-off. *Porter* v. *Roseman* (1905), 165 Ind. 255, 74 N.E. 1105; *Eigenmann et al.* v. *Clark et al.* (1898), 21 Ind. App. 129, 51 N. E. 725. The rule has not been extended so far, however, as to permit a set-off where, as here, one of the claims was actually owned, in whole or in part, by a third party. *Teeters* v. *City National Bank of Auburn* (1938), 214 Ind. 498, 14 N. E. (2d) 1004; *Wolcott* v. *Pierre, supra.*

Nor can we see in this case how any irremediable injustice would result from a failure to allow a set-off.

A depositor in an insolvent bank is ordinarily permitted to set off his deposit or other claim which he

owns against a debt which he owes to the bank at the time of its insolvency. This is on the theory that it is only the net balance of the debt which the bank might recover and, therefore, it is only the net balance which the receiver takes for the benefit of the creditors of the bank. 7 Am. Jur. § 473, p. 339. As we have said above the rights and equities of all of the parties are fixed and determined as of the time the bank suspends operations. When the receiver takes charge of the assets he must then do equity to all of the creditors. It is an ancient maxim that equality is equity. The receiver may not so handle or dispose of the assets of the trust as to benefit one creditor at the expense of the other.

In the instant case the receiver, at the time the bank closed, took the two bonds as collateral on the two notes which the bank owned. When he made a settlement on the notes and acquired the absolute ownership of the bonds it was for the benefit of all of the creditors. It would be inequitable to permit the receiver to use assets of the trust so acquired for the payment of one creditor at the expense of all of the other creditors. To permit the set-off asked by the appellant would accomplish the same result.

The judgment is affirmed.

NOTE.—Reported in 47 N. E. (2d) 309, 145 A. L. R. 997.