## CITY OF MICHIGAN CITY v. BROSSMAN.

[No. 15,686. Filed December 14, 1937. Rehearing denied March 10, 1938. Transfer denied May 10, 1938.]

*Walter R. Arnold* and *Lawrence Cannon,* for appellant.

*Walter C. Williams, Victor R. Jose* and *Baker & Daniels,* for appellee.

DUDINE, P. J.—This was an action instituted by appellee Charles Brossman against appellant City of Michigan City for damages for an alleged breach of a contract by which appellant city allegedly employed appellee to prepare plans and specifications for and to

superintend the construction of a sanitary sewer on Sheridan Beach, a section of Michigan City, Indiana.

The issues were formed by an amended complaint in one paragraph and an answer in general denial. A demurrer to the complaint was overruled.

The cause was submitted to the court for trial without a jury. The court made a special finding of facts and stated conclusions of law thereon all of which were in favor of appellee. Judgment having been rendered in accordance with the conclusions of law, that appellee recover $3,676.16 from appellant, this appeal was perfected. The errors assigned are alleged error in overruling the demurrer to the complaint and alleged errors in each of the conclusions of law.

The complaint alleged, among other facts, that: "on or about the 14th day of March, 1927, the City of Michigan City, by and through its Business Manager and by and through the Commissioners of the City of Michigan City, adopted a resolution providing for the construction of a certain project known as the Sheridan Beach Local District Sanitary Sewer. . . .

"That pursuant to such resolution the City of Michigan City, by and through its then City Manager A. R. Couden, on or about the 7th day of March, 1927, entered into a written agreement with this plaintiff by the terms of which this plaintiff undertook and agreed to perform said engineering services for such sewer system so proposed to be constructed at and for the consideration of 7½% of the total cost of all the work. . . .

"That at the time of the execution of such agreement the City of Michigan City, pursuant to the provisions of the Statutes, had determined to operate under what was then the City Manager Law, and that pursuant to such law had organized and that the said Couden was the then duly elected, acting and authorized City Manager of the defendant City of Michigan City.

"That pursuant to the foregoing contract the plaintiff prepared plans, specifications and estimates for the work provided for by the City of Michigan City for the construction of such sewer system, and submitted the same for the approval of the City Manager and the City Council of the City of Michigan City, providing in such approved estimates the sum of $7,500.00 for engineering expenses.

"That thereafter the said City of Michigan City, by and through its Manager and City Commissioners, on or about the 26th day of November, 1929, finally approved said plans and specifications for the construction of said sewer system. . . ."

The complaint also alleged that said sewer was constructed, and "that this plaintiff performed the engineering services . . . under the terms of said contract alleged herein . . ." Said contract was set out in the complaint.

The complaint prayed a judgment in the sum of $20,000.00.

The demurrer to the complaint charged that the complaint did not state facts sufficient to constitute a cause of action.

In support of the assigned error in overruling the demurrer to the complaint appellant contends that the statute under which the alleged "Commission form" of city government existed was declared unconstitutional by our Supreme Court in *Keane* v. *Remy et al.* (1929), 201 Ind. 286, 168 N. E. 10, and that therefore said statute did not *in fact* create any office of "city commissioner" or "city manager," which offices said statute purported to create, and there being no *de jure* offices of "city commissioner" and "city manager," the alleged governing body of the City of Michigan City had no official standing or capacity, and could not bind the city by the alleged contract. The only authority cited by

appellant in support of said contention is *Norton* v. *Shelby County* (1886), 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178.

Chapter 218, Acts 1921 (p. 594), which created said "commission form" of city government *was* declared unconstitutional by our Supreme Court in *Keane* v. *Remy et al., supra,* in 1929, after the alleged contract was allegedly accepted by the "city commission" and "city manager" of Michigan City.

Appellant does not contend that a municipal corporation can not be bound by the contracts of *de facto* officers, but contends that *there can be no de facto officers unless the offices which they claim to fill exist de jure;* in other words *there can be no de facto officers without de jure offices.* This question has not been decided by the courts of review of this state.

*Norton* v. *Shelby County, supra,* supports appellant's said contention. That was an action upon bonds issued by the Board of County Commissioners of Shelby County, in Tennessee, under and by virtue of an act of the legislature of that state which purported to create such Board of County Commissioners and purported to give it power to issue bonds on behalf of such county. After the bonds were issued and bought by Norton, said statute creating such board of commissioners and giving it such power, was declared unconstitutional by the Supreme Court of Tennessee, and that court held that actions of such boards were utterly void. Upon appeal of said cause it was contended in the Supreme Court of the United States that "if the Act creating the board was void and the commissioners were not officers *de jure* they were nevertheless officers *de facto* and that the acts of the board as a *de facto* court are binding upon the County." The United States Supreme Court said with reference to such contention (p. 441):

"This contention is met by the fact that there can be no officer, either *de jure* or *de facto*, if there be no office to fill. As the act attempting to create the office of commissioner never became a law, the office never came into existence. Some persons pretended that they held the office, but the law never recognized their pretensions, nor did the Supreme Court of the State. . . .

"The doctrine which gives validity to acts of officers *de facto*, whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby. . . . For the good order and peace of society their authority is to be respected and obeyed until in some regular mode prescribed by law their title is investigated and determined. It is manifest that endless confusion would result if in every proceeding before such officers their title could be called in question. But the idea of an officer implies the existence of an office which he holds. It would be a misapplication of terms to call one an officer who holds no office, and a public office can exist only by force of law. . . . An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.".

In that case the court with reference to *State* v. *Carroll* (1871), 38 Conn. 449, says (p. 445): "The opinion of Chief Justice Butler is an elaborate and admirable statement of the law, with a review of the English and American cases, on the validity of the acts of *de facto* officers, however illegal the mode of their appointment." The United States Supreme Court in the Norton case, *supra*, incorporates into its opinion and does not criti-. cize but apparently approves a definition of an officer *de facto*, which definition is stated in *State* v. *Carroll*, *supra*, and which definition, so far as it is pertinent to this appeal, is as follows (p. 446):

"An officer *de facto* is one whose acts, though not

those of a lawful officer, the law, upon principles of policy and justice will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office are exercised:

\* \* \*

"Fourth. Under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such."

The United States Supreme Court then discusses cases cited in *State* v. *Carroll, supra,* and says (p. 448) : "It is evident, from a consideration of these cases, that the learned Chief Justice, in *State* v. *Carroll,* had reference, in his fourth subdivision (of the definition of a *de facto* officer) . . . to the unconstitutionality of acts appointing the officer, and not of acts creating the office."

The United States Supreme Court says further that *State* v. *Carroll, supra* (p. 449), ". . . in no way militates against the doctrine we have declared (that there can be no officer *de facto,* if there is no *de jure* office), but is in harmony with it."

It is our opinion that the Carroll case, *supra, does* militate against said doctrine and that the fourth subdivision of the definition of a *de facto* officer as stated in said case and set forth above refers to unconstitutional laws *which purport to create offices as well as unconstitutional laws which purport to create officers.* See *Lang* v. *Bayonne* (1906), 74 N. J. L. 455, 68 Atl. 90, and *State* v. *Pooler* (1909), 105 Me. 224, 74 Atl. 119, to the same effect.

In the Carroll case, *supra,* the court says (p. 472) :

"We come now to the second and more important proposition advanced in *Brown* v. *O'Connell* (36 Conn. 447), to the effect that 'a law passed by the legislature cannot have color of authority, or the semblance of authority, unless it appears *prima facie* to be law, and that it cannot so appear if it is manifestly repugnant to the constitution; that a law of doubtful constitutionality may be presumed

to be constitutional until it is judicially decided to be otherwise, but that a law manifestly unconstitutional is void upon its face, and unable to confer the appearance or color of authority.' The inference to be drawn from these assumptions necessarily is, that a manifestly unconstitutional law is without any force whatever, and that whether manifestly unconstitutional or not, and whether to have the appearance and force of law or not, are questions for the private judgment of the citizen. If these assumptions were true they would dispose of this case, but they are of novel impression, and fundamentally erroneous. Every law of the legislature, however repugnant to the constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and if thought unconstitutional resisted, but must be received and obeyed, as to all intents and purposes law, until questioned in and set aside by the courts. This principle is essential to the very existence of order in society. . . .

"If then the law of the legislature, which creates an office and provides an officer to perform its duties, must have the force of law until set aside as unconstitutional by the courts, it would be absurd to say that an officer so provided had no color of authority. But on this question we need not reason. There is an irresistible current of authority in this country which determines it." (Then follows a discussion of seven cases from courts of appeal of various states.)

Those excerpts from the Carroll case indicate that the court intended by the fourth subdivision of said definition of a *de facto* officer, to include *all de facto* officers who come within the language used in said definition, and that the court *did not* intend to exclude persons who claim to hold offices which were created by unconstitutional laws; therefore the Carroll case *does* militate against said doctrine of *Norton* v. *Shelby County, supra.*

In *Lang* v. *Bayonne* (1906), 74 N. J. L. 455, 459, *supra,* the court through Chief Justice Gummere says:

"The vice of the doctrine of *Norton* v. *Shelby*

*County (supra)*, as it seems to me, is that it fails to recognize the right of the citizen, which is to accept the law as it is written, and not to be required to determine its validity. The latter is no more the function of the citizen than is the making of the law. Each of these functions has been delegated by the constitution, the one to the judicial and the other to the legislative branch of the government. And it is to be observed that the judicial function of determining the validity of statutes is confined within a very narrow scope. Courts are not vested with the general supervision of legislation. They have received no authority from the people to inspect each statute, as it comes from the hands of the legislature, and declare whether or not it infringes constitutional limitations. The function of the judicial department with respect to legislation deemed unconstitutional is not exercised *in rem*, but always *in personam*. *Allison* v. *Corker*, 38 Vroom 596. Only such statutes as affect the rights of parties to judicial proceedings are ever subjected to the scrutiny of the courts. . . . To require the citizen to determine for himself, at his peril, to what extent, if at all, the legislature has overstepped the boundaries defined by the constitution in passing . . . statutes would be to place upon him an intolerable burden, one which it would be absolutely impossible for him to bear—a duty infinitely beyond his ability to perform. In my opinion the provisions of a solemn act of the legislature, so long as it has not received judicial condemnation, are as binding upon the citizen as is the judgment of a court rendered against him so long as it remains unreversed."

In a discussion of a distinction that might be attempted to be made between a so-called holder of a *de facto* office and a *de jure* officer, it is said in the Lang case, *supra* (p. 463) :

"But this, it seems to me, is a mere verbal distinction. The fact remains that the acts of the incumbents of such so-called offices are as potent, so far as the public is concerned, as are the acts of any *de jure* officer who performs the duties of a legally existing office.

"In my judgment, the same public policy which

requires obedience from the citizen to the provisions of a public statute which creates a municipality, and provides for its government, even though unconstitutional, so long as it has not received judicial condemnation, equally justifies his obedience to every other law which the legislature has seen fit to enact until such law has been judicially declared to be invalid.

"I conclude that an officer appointed under authority of a statute to fill an office created by the statute is at least a *de facto* officer, and that acts done by him antecedent to a judicial declaration that the statute is unconstitutional are valid, so far as they involve the interests of the public and of third persons; . . ."

In the Lang case, *supra,* it is held that members of a board of police commissioners of the city of Bayonne, New Jersey, appointed under authority of a statute to fill the offices of police commissioners of said city, which offices were created by said statute, and which statute was thereafter judicially declared unconstitutional, were *de facto* officers, and acts done by them as such police commissioners prior to such judicial declaration were valid so far as they involved the interests of the public and third persons.

The Supreme Court of Maine, in discussing the question, "Can there be a *de facto* officer without a *de jure* office?" said in *State* v. *Pooler* (1909), 105 Me. 224, 231, *supra:*

"... we are unable to discover any difference, in reason, for declaring an officer to be *de facto,* whether he holds a *de facto* or *de jure* office, if he has occupied it with the usual insignia of a *de facto* officer. The authorities are in harmony that the *de facto* doctrine was invented to deal with effects, not with causes. The effects only can be reached. The causes cannot. The official acts are accomplished. If the effects are alike it is immaterial that the causes differ. The effects, whether from a *de jure* or *de facto* office, are alike. Hence, the acts of the officer occupying either position should be declared *de facto.*"

In the Pooler case, *supra,* attention is called to the conflict between *Norton* v. *Shelby County, supra,* and *Lang* v. *Bayonne, supra,* and to the fact that in both of said cases reliance is placed upon *State* v. *Carroll, supra.* In the Pooler case the Supreme Court of Maine says in effect that *State* v. *Carroll, supra,* supports the Lang case, and does not support said doctrine of *Norton* v. *Shelby County, supra.* We agree with said conclusion of the Supreme Court of Maine.

*State* v. *Carroll, supra,* is admittedly a leading case on the question of what is essential to constitute a person a public officer and as we have previously stated, we think that case holds in effect that a person who holds an office created by a statute which is judicially declared unconstitutional is a *de facto* officer until such judicial declaration is made. *Lang* v. *Bayonne, supra,* and *State* v. *Pooler, supra,* are directly in point and support such holding.

We consider the reasoning as to that question in *Norton v. Shelby County, supra,* to be faulty. We think the reasoning with reference to that question in the Carroll, Lang, and Pooler cases, *supra,* is logical and convincing. We hold that the city commissioners and the city manager of Michigan City were officers *de facto* of said city until the "City Manager Law" was declared unconstitutional by our Supreme Court, and until that date said officers could bind the city by contracts.

Other points are stated in appellant's brief in support of the assigned error in overruling the demurrer to the complaint, but none of said points are covered by the memoranda to the demurrer, and therefore this court will not consider said points.

The question whether or not the city commissioners and city manager of Michigan City were *de facto* officers

of the city and as such could bind the city by contract is presented under the assigned error in conclusion of law number one, which was a holding that the contract was valid and enforcible against the city. What we have said on that question with reference to the complaint is sufficient answer to that question with reference to said conclusion of law.

We deem it unnecessary to deliniate the facts found by the court or conclusions of law except to state that in the second conclusion of law the court held that the city had breached its contract, and in the third conclusion of law the court held that appellee was entitled to recover from the city $2,782.28 plus interest.

Appellant calls our attention to the fact that the court found specially that said contract was made pursuant to a preliminary improvement resolution adopted March 14, 1927, that thereafter, on November 12, 1928, "the commission unanimously rescinded all action upon the proceedings covering the Sheridan Beach Local Sewer No. 50," that on January 15, 1929, the "city engineer" submitted "revised plans and specifications for the construction of a sanitary sewer in Sheridan Beach," and in connection therewith said commission adopted another resolution "for the construction of such sewer to be known as Sheridan Beach Local Sewer No. 50," that the sewer was constructed pursuant to said latter resolution, and that there is no finding of fact whatsoever that appellee had aught to do with or performed any act for the furtherance of the work finally established under the last mentioned resolution, except the finding that "a portion of such plans and specifications . . . . employed and used by the defendant in the construction of the sewer which was finally completed" were prepared by appellee. Appellant contends that the finding of facts does not support the third conclusion of law because the court did not find the value of appellee's serv-

ices which were employed in the construction of the sewer.

We meet that contention by noting that the contract fixed the amount due as 7½% of the total cost of the improvement, that the court found the total cost of the improvement, and said two facts are a sufficient basis for the determination of the "value of appellee's services" or the amount due him for his services.

Appellant also contends the contract failed as an obligation upon the City of Michigan City when the particular resolution under which it proposed to raise the money, failed of final passage or was rescinded, citing *Stemmler* v. *Borough of Madison* (1912), 82 N. J. L. 596, 83 Atl. 85. On account of the dissimilarity of the facts and the legal questions involved, the decision in that case is not applicable to the case before us.

The general rule is that the power to pass by-laws, ordinances, or regulations affecting the government of a municipal corporation carries with it by implication the power to modify or repeal such by-laws, ordinances and regulations unless the power is restricted in the law conferring the right.

"The limitation to which the power is subject is that the repeal or change can not be made so as to affect any vested right lawfully acquired under an ordinance or regulation lawfully adopted." *Welch et al.* v. *Brown* (1885), 103 Ind. 252, 256, 2 N. E. 722, citing 1 Dillon Mun. Corp. Sec. 314.

We hold that by virtue of the contract appellee had "vested rights lawfully acquired" under and pursuant to the original improvement resolution, to wit, a right to serve as engineer of the construction of said sewer in accordance with the terms of said contract, and a right to the performance by the city of its legal obligations assumed in said contract; and said

vested rights of appellee could not be interfered with by the subsequent improvement resolution. We do *not,* however, hold that the original resolution could not be rescinded by the subsequent resolution in so far as parties who had no vested rights under the original resolution are concerned. See Dillon Mun. Corp. Sec. 314 (Sec. 584 in 5th Ed.) and authorities there cited.

Appellant also contends "the city itself could not become obligated for cost of engineering work in the construction of a sewer (aside from its own engineering staff) *where the order of improvement calls for the payment by owners of property beneficially affected"* (our italics), citing Chap. 221, Acts 1927, p. 642 (which is applicable to the instant case, but was amended in 1933, see Sec. 48-2702 Burns 1933, §12520 Baldwin's 1934). We find no fault with said contention, but appellant has not shown in its brief that a holding that the conclusions of law are supported by the finding of facts would contravene the rule of law contended for. (It should be noted here that appellant does not contend *in support of said point* that the finding of facts fails to show that the city collected the assessments which constituted the fund out of which the engineer's charges had to be paid. See Chap. 221, Acts 1927, p. 642, *supra.*)

Appellant contends further: "Where the body having power to order the establishment of local improvements engages a municipality in contracts for the work under a resolution calling for the payment thereof out of the funds to be collected under special assessment of benefits to property affected, *there can be no direct liability of the municipality on any of such contracts* and no cause of action against the municipality if the contractor is not paid (our italics)," citing *Town of Tipton* v. *Jones* (1881), 77 Ind. 307.

Appellant continues with the following contention,

"Nor can the municipality be held liable in damages *for failure to make the assessment* in an amount sufficient to cover the payment of the contracts made to effect the improvement, the remedy being one in mandate to compel the public body having jurisdiction and authority to perform its duty in that behalf" (our italics), citing *Town of Tipton* v. *Jones, supra,* and *Town of Dublin et al.* v. *State ex rel.* (1926), 198 Ind. 164, 169, 152 N. E. 812.

We do not find fault with either of said contentions, but, appellant has not shown that a holding that the conclusions of law are supported by the finding of facts would contravene either of said rules of law contended for.

It should be noted that appellant does not present the question whether or not *in order to support the conclusions of law in the instant case,* the finding of facts necessarily had to include a finding that the city had collected the assessments or any portion of them (see Chap. 221, Acts 1927, p. 642, *supra*), and consequently we have not decided that question.

No reversible error having been shown, the judgment should be affirmed. The court having been informed that the death of appellee occurred after the submission of this cause in this court, the judgment is affirmed as of the date of submission.