MARTIN v. THE BEN DAVIS CONSERVANCY DISTRICT.

[No. 29,624. Filed October 2, 1958.]

504

506

*Lehman Sadler,* of Indianapolis, for appellant.

*Nelson G. Grills,* of Indianapolis, for appellee.

*Edwin K. Steers,* Attorney General, *Addison M. Dowling,* Deputy Attorney General, and *John M. Cregor,* Special Counsel, Indiana Flood Control and Water Resources Commission, *Amicus Curiae.*

ARTERBURN, J.—This appeal is brought to determine the constitutionality of the Conservancy Act of Indiana. [Acts 1957, ch. 308, p. 851, being §§27-1501—27-1599, Burns' 1957 Cum. Supp.] Briefly, this Act authorizes the creation of conservancy districts for the purpose of controlling stream pollution, drainage, irrigation, water supply and other natural resources. It creates a board of directors and permits the levying of a tax and assessment for the benefits and improvements to the real estate within the district.

We are indebted to the Attorney General for briefs as *amicus curiae*. He has appeared at the request of the Indiana Flood Control and Water Resources Commission and the Indiana Stream Pollution Control Board.

At the outset we are confronted with what appears to be a rather formidable constitutional question. A somewhat similar Act [Acts 1947, ch. 239, §§27-1201—27-1283, p. 622, being Burns' 1948 Replacement], yet importantly different in some respects, was declared unconstitutional by this court. *State, P. R. R. Co. et al. v. Iroq. Cons. Dist. Ct., et al.* (1956), 235 Ind. 353, 133 N. E. 2d 848.

The creation of the Ben Davis Conservancy District (the appellee in this case) was begun under that prior Act of 1947. Pursuant to a petition filed and other preliminary steps in conformity therewith, the Marion Circuit Court adjudicated and declared on March 10, 1950 the Ben Davis Conservancy District to be established and appointed directors and appraisers therefor. No constitutional question was raised and no attack was made upon the Conservancy Act of 1947 in that proceeding. No appeal was taken therefrom. The appellee seeks to justify the judgment based on the unconstitutional Act of 1947 and the continued existence

of the Ben Davis Conservancy District under the recent 1957 Act. The appellant claims the 1947 Act is void for all purposes and the proceedings thereunder are a nullity.

Where a court of competent jurisdiction, before the statute has been declared unconstitutional, renders a judgment based upon the statute from which judgment no appeal is taken, the judgment is binding upon the parties thereto. It is the law of that case and cannot be attacked collaterally. A judgment in another case later declaring the law unconstitutional cannot have a retroactive effect upon prior judgments based upon the same legislation in cases from which no appeal was taken and where the judgments have become final. *Oviatt* v. *Behme* (1958), 238 Ind. 69, 147 N. E. 2d 897; *State ex rel. Piel* v. *Arkansas Construction Co.* (1929), 201 Ind. 259, 167 N. E. 526; *The Board of Children's Guardians of Marion County* v. *Shutter* (1894), 139 Ind. 268, 34 N. E. 665; 30A Am. Jur., Judgments, Sec. 19, p. 171.

The principle that a citizen may lose his constitutional rights by inaction should be sparingly applied, yet public policy demands that somewhere and at some time there must be an end to litigation and that which has been adjudicated is final and ends the matter. We said in *Oviatt* v. *Behme* (1958), 238 Ind. 69, 147 N. E. 2d 897, at p. 902, with reference to a judgment which had become final and from which no appeal has been taken:

". . . It was an adjudication of the law as to that election in that county and was the law of that case. We may not at this time review the judgment as if it were on appeal here, even if we assume that it was erroneously decided. The judgment cannot be collaterally attacked in this court, any more than in any other court."

In a note to the *Iroquois Conservancy District* case, *supra,* this court took a realistic approach to. the same problem when we recognized the *de facto* character of other conservancy districts established under, but before the Act of 1947 was declared unconstitutional. Bond issues of those districts were outstanding. In those instances the rights of third parties with whom the *de facto* officers had dealt were involved. We do not decide nor attempt to decide here what the result would be if persons purporting to be officers attempted, after an Act was declared unconstitutional, to issue bonds under the authority of such an invalid Act. That is entirely another question.

The general rule is said to be that a statute declared unconstitutional is void *ab initio.* However, this is subject to the exception that the finality of a judgment cannot be affected thereby. We are concerned here with a judgment from which no appeal was taken, rendered before the Act was declared unconstitutional—not the mere acts of *de facto* officers. A *fortiori,* such a judgment is a final adjudication of all issues which could have been adjudicated, and is as binding on the parties thereto as any other judgment.

The theory that a law held unconstitutional is no law at all; and void *ab initio* for all purposes, including retroactive invalidity, runs counter to the hard facts of life. The actual existence of a statute prior to a determination of invalidity is an operative fact. Because of such *de facto* existence and reliance upon its validity, it has practical consequences which cannot be justly ignored. The past cannot always be erased by a simple judicial decree. Chief Justice Hughes said, in considering the principle of retroactivity:

"... Questions of rights claimed to have become vested, of status, of prior determinations

deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified. Without attempting to review the different classes of cases in which the consequences of a ruling against validity have been determined in relation to the particular circumstances of past transactions, we appropriately confine our consideration to the question of res judicata as it now comes before us." *Chicot Co. Drainage Dist.* v. *Baxter State Bank* (1940), 308 U. S. 371, 374, 375, 84 L. Ed. 329, 60 S. Ct. 317, revg. (C. A. 8th), 103 F. 2d 847, and reh. den. 309 U. S. 695, 84 L. Ed. 1035, 60 S. Ct. 581.

In this case there are additional factors which reinforce the viewpoint we take on this issue. The Conservancy Act of 1957 contains a curative section, which reads as follows:

"Any area established in accordance with the provisions set forth by Chapter 239 of the Acts of the Indiana General Assembly of 1947 (Unconstitutional) by an order of the court prior to April 20, 1956, as a special district for any purpose provided in section 3 (§27-1503) of this act shall be deemed to be a conservancy district pursuant to the provisions of this act. Any orders of the court and acts of the board of directors are valid if permitted by the provisions of this act. Such district shall function as a conservancy district the same as if established under the provisions of this act." Acts 1957, ch. 308, §100, p. 851, being §27-1599, Burns' 1957 Cum. Supp.

Pursuant to that section, the Marion Circuit Court, on the 21st day of March, 1957, entered a second order reaffirming the establishment of the Ben Davis Conservancy District and the order appointing the directors

and appraisers. Thereafter, the board of directors, proceeding under the recent Act of 1957, petitioned the court to approve a final plan for the district. The court, on August 28, 1957, after notice and a hearing, approved the final plan. The appraisers then filed a report with the court. The court after notice ordered a hearing on this report and on the 19th day of July, following the hearing, approved the appraisers' report. Up to this point the record, so far as it is presented to us, shows no objections or exceptions whatever to the proceedings had. Objections which could or should have been made, if not made, are waived.

The record next shows that a petition was filed to amend the final plan and also amend the appraisers' report. Among the reasons given therefor was that the costs of the project had increased approximately 10% over the original plans. The appellant Martin, a taxpayer and owner of real estate within the Ben Davis Conservancy District, filed exceptions to the amended reports and also filed a petition to dismiss the proceedings to amend the reports on the ground that the proceedings were being conducted under unconstitutional Acts. The Marion Circuit Court ordered the final plan amended and approved the appraisers' report, overruling the appellant's grounds of objections.

A curative act should be liberally construed. It is true it acts retrospectively, but that does not make such a curative act unconstitutional unless violating some constitutional provision such as impairing the obligation of a contract or the taking of property without due process. There is no showing in this case that there is any violation of such rights. Curative acts are often necessary to protect the public who have dealt in good faith with officers or political subdivisions. The legislature may recognize a *de facto*

condition or status although it cannot authorize unconstitutional acts. The curative secton does not authorize a "new and novel court," which was one of the constitutional defects in the Act of 1947. The legislature only offered a curative act for a *de facto* condition which this court has recognized.

> "A curative act is a statute passed to cure defects in prior law, or to validate legal proceedings, instruments, or acts of public and private administrative authorities which in the absence of such an act would be void for want of conformity with existing legal requirements, but which would have been valid if the statute had so provided at the time of enacting." Horack, Sutherland Statutory Construction, 3rd Ed., Vol. 2, Sec. 2213, p. 136. *State ex rel. Harris, etc.* v. *Mutschler et al.* (1953), 232 Ind. 580, 115 N. E. 2d 206.

The legislature was within its prerogative in enacting section 100 of the Act in question.

We take up now the direct attack upon the constitutionality of the Conservancy Act of 1957 [Acts 1957, ch. 308, p. 851, being §§27-1501 — 27-1599, Burns' 1957 Cum. Supp.], under which the Ben Davis Conservancy District is now purporting to operate. We must start with the assumption that the legislature would not deliberately violate the organic law of this state, and our interpretation of its acts should be such, if reasonable, as to tend to support the constitutionality thereof. Our power to declare an Act unconstitutional should be exercised with the utmost care.

The contention is first made that the title to the Act does not comply with Article 4, Section 19 of the Constitution of Indiana, which reads as follows:

> "Every Act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title . . . . ."

The title of said Chapter 308 of the Acts of 1957 reads:

"An Act relating to Conservancy Districts."

It is contended that the title of the Act is too broad. The usual test applied in such a case is whether or not the title of the Act is misleading or fails to give fair notice of its contents. The title to the Act of 1947 which was considered in the Iroquois case was held defective by the majority opinion—not because it was too broad—but rather because it failed to disclose the creation therein of a "new and novel court." *State, P. R. R. Co. et al.* v. *Iroq. Cons. Dist. Ct. et al.* (1956), 235 Ind. 353, 133 N. E. 2d 848. It has been held that a title "An Act concerning highways" meets the constitutional requirements, even though it relates also to streets. *Smith* v. *Board, etc.* (1910), 173 Ind. 364, 90 N. E. 881. An Act entitled "An Act concerning drainage and repealing laws in conflict" was held proper in *Thorn* v. *Silver* (1910), 174 Ind. 504, 89 N. E. 943; and an Act entitled "An Act concerning taxation and declaring an emergency" was held not too broad a title in *Lutz, Atty-Gen. et al.* v. *Arnold, Atty. & Tr. et al.* (1935), 208 Ind. 480, 193 N. E. 840.

A review of the decisions of this court upon the question involved leads us with little uncertainty to the position that the title in this case is proper and meets the requirements of the Constitution. The appellant has pointed out to us nothing in the Act with which we deal that does not come within the subject matter of the title, nor has he pointed out in what way the title is confusing or misleading. It seems to us "conservancy districts" have a well known and common meaning which would not tend to mislead or confuse. The words have had a meaning with much the same context as

far back as 1500. See Vol. 2, p. 854, Oxford English Dictionary on Historical Principles, by J. A. H. Murray.

Webster's New International Dictionary, English Language, 2nd Ed., 1942, defines "conservancy" as follows:

> "conservation; esp. official conservation, as of trees, rivers or public health."

An examination of the scope of the title here in question in the light of the above authorities indicates that it would cover the establishment, organization and administration of territorial divisions for the purpose of regulating and caring for the use of water, rivers, streams, forests and related natural resources, along with projects to protect and preserve such resources including flood control, irrigation, and sewage disposal systems.

The further contention is made that the Act in question delegated executive and administrative authority to the Circuit Court in violation of Article 3, Section 1 of the Indiana Constitution, separating the three departments of government.

It is particularly stressed that the court is given the power to appoint appraisers and directors of the conservancy district and that this is an infringement upon the right of local government. The case cited in support of this position is *City of Terre Haute et al.* v. *Evansville and Terre Haute R. R. Co.* (1897), 149 Ind. 174, 46 N. E. 77. The opinion in that case devotes two pages to listing many non-judicial functions performed by Circuit Courts. It points out the legislature has again and again conferred such powers upon judges. It is now recognized that the constitutional provision providing for the separation of

the powers of government is applicable only to the state government. *Baltimore, etc. R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228, 68 N. E. 266; *State ex rel. Buttz* v. *Marion Cir. Ct.* (1947), 225 Ind. 7, 72 N. E. 2d 225. The practice of authorizing circuit court judges and other local judges to perform certain local administrative duties, including making appointments to local boards and commissions, has become so well established and is so interwoven with the operation of local governing units that it is no longer a constitutional question. The principle has been approved upon numerous occasions. *Sarlls, City Clerk* v. *State ex rel. Trimble* (1929), 201 Ind. 88, 166 N. E. 270; *State ex rel. Buttz* v. *Marion Cir. Ct.* (1947), 225 Ind. 7, 72 N. E. 2d 225; *Petition for Appointment of Magistrates* (1940), 216 Ind. 417, 24 N. E. 2d 773; *St. ex rel. Sch. C. of South Bend* v. *Thompson, Aud.* (1937), 211 Ind. 267, 6 N. E. 2d 710.

Some of the principles announced in the case of *City of Terre Haute et al.* v. *Evansville and Terre Haute R. R. Co.* (1897), 149 Ind. 174, 46 N. E. 77 were not necessary to the opinion rendered in that case, and there is no reason to seek to extend the implications in that case to the extent of holding that it is an infringement upon the right of local self-government for a judge to be given the authority to make appointments of officials performing duties of a local nature.

The appellant further states that this act violates Article 1, Section 25 of the Constitution of Indiana, which provides:

> "No law shall be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this constitution."

It is urged that the Conservancy Act becomes effective only upon a petition filed with the circuit court

and after a hearing, finding, and judgment by the authority of a circuit court. The case of *Hollingsworth* v. *State Board of Barber Examiners* (1940), 217 Ind. 373, 379, 28 N. E. 2d 64 is cited in support of this position by the appellant. However, this case specially recognizes the type of procedure provided in the Conservancy Act here in question and says:

> "A law may also provide that a vote, petition, or other expression of approval on the part of the people affected thereby shall be prerequisite to setting its machinery in operation. Statutes for public improvements and the expenditure of public funds frequently require that a popular vote or a petition signed by a specified number of householders or freeholders shall be a condition precedent to invoking their benefits."

Actually the law was in full force and effect from the date fixed by authority of the legislature. The constitutionality in the operation of such a statute is well settled in this state and we need not give the matter further consideration. *School City of Marion* v. *Forrest* (1907), 168 Ind. 94, 78 N. E. 187; *Johnson* v. *Board of Park Commissioners* (1930), 202 Ind. 282, 174 N. E. 91; *The Lafayette, Muncie, and Bloomington R. R. Co. and Another* v. *Geiger* (1870), 34 Ind. 185.

Appellant also contends that the Act violates Article 10, Section 1 of the Constitution of Indiana, which provides:

> "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal . . . ."

The Act in question provides with reference to raising the revenue to pay for the improvement:

"All the *real property* included within the district shall constitute a taxing district for the purpose of levying *special benefit taxes* to pay for the expenses of preparing the final plan, putting it into operation by constructing the necessary works, and thereafter operating and maintaining the district. . . ." (Our italics.) Acts 1957, ch. 308, §62, p. 851, being §27-1562, Burns' 1957 Cum. Supp.

It is argued that because the personal property in the Conservancy District is not taxed and only real estate bears the burden of raising the revenue to pay the expenses and costs of the proposed improvement, the Act is violative of the above constitutional provision. We are not prepared to and need not accept that interpretation of the constitution here, since the constitutional provision relied upon applies only to general tax levies. We do not determine here whether or not the legislature has the power to exempt personal property or other classes of property from general tax levies, since we are concerned in this case only with special benefits inuring to property by reason of proposed improvements. *School Town of Windfall City* v. *Somerville* (1914), 181 Ind. 463, 104 N. E. 859. We are considering in this case a special benefit tax based upon the benefits accruing from a local public improvement in accordance with the special wording of the statute above quoted. If the purpose of the taxation is a local public improvement, as distinguished from a general political or governmental purpose, the legislature can determine what general class of property will be benefited thereby, and provide for the creating of a special taxing district to pay for such improvements. In *Gilson et al.* v. *The Board of Commissioners of Rush County* (1890), 128 Ind. 65, 27 N. E. 235, this court was faced with the contention that personal property in a special taxing district

should not be taxed, as well as real property. We there held that it was within the prerogative of the legislature, so long as there was a reasonable basis therefor, to create local taxing districts and determine the property that would be specially benefited thereby, which should bear the burden of the improvements. In *Board of Com'rs, etc.* v. *Harrell et al.* (1897), 147 Ind. 500, 46 N. E. 124, the question was again reviewed and the principle again approved. In *Hutchins* v. *Town of Fremont* (1924), 194 Ind. 74, 85, 142 N. E. 3, in connection with the same question, this court said:

"... That is, if the legislature has determined that only the real estate in a given district is benefited, then if the assessment is uniform according to some recognized standard, such as its value, area, or frontage, the constitutional requirement is satisfied."

It may be also said that if the assessment or tax to pay for the local improvement is levied pro-rata in accordance with the benefits received by the real estate, it would also be in accordance with recognized standards of equality and uniformity. 5 I. L. E. Constitutional Law, Sec. 211, p. 515.

We point out that the Act in this case, by its method of operation, creates a special tax and assessment based upon benefits received. Although Section 78 of the Acts of 1957 (Burns' §27-1578) provides for a uniform levy within the district to raise revenue for the operation and payment of indebtedness based upon special benefits determined by appraisers, yet the Act provides for the appraisal of damages to property injured and of "exceptional" benefits to those who receive benefits over and above those uniformly received throughout the district. This provision recognizes that there may be inequalities in the benefits received (i.e.,

"exceptional" benefits as distinguished from "special" benefits) and makes provisions for payment accordingly. In its operation the landowners pay in proportion to the benefits they receive and are granted damages in event such exist. Acts 1957, ch. 308, §64, p. 869, being §27-1564 Burns' 1957 Replacement.

The appellant next alleges that the legislature has created a municipal corporation and as a result the final plan proposes to create an indebtedness which exceeds the constitutional debt limitation under Article 13, Section 1 of the Indiana Constitution, namely: that the proposed bonded indebtedness of three million dollars is in excess of 2% of the assessed valuation of the district, namely: nine million dollars. The legislature has the power to create municipal corporations. It also has the power to create special taxing districts (as distinguished from municipal corporations) for the purpose of local public improvements. *City of Indianapolis et al.* v. *Buckner et al.* (1954), 233 Ind. 32, 116 N. E. 2d 507; *Dept. of Pub. Sanitation* v. *Solan* (1951), 229 Ind. 228, 97 N. E. 2d 495. The revenue measures for the purpose of paying the costs of such local public improvement may be by a special assessment or tax pro-rated upon the basis of the value or benefits received from such improvement.

Pursuant to such a plan the legislature has provided a method of fixing the benefits in the case before us, and an assessment is made for taxing purposes upon that basis. The bonds and indebtedness are payable only out of the revenues raised by such assessments or levies. The revenues so collected must be kept in a separate fund and can be used only for the purposes of paying for the local public improvement, the cost of which created the indebtedness. Such

an arrangement does not create a municipal corporation within the meaning of the constitutional provision.

In *Archer, Jr., etc. et al.* v. *City of Indpls., etc. et al.* (1954), 233 Ind. 640, 122 N. E. 2d 607, we stated that even though the legislature may give special taxing districts for local public improvements some of the characteristics or attributes of a municipal corporation, still that is not decisive. There is, of necessity, some similarity in the administration of such districts or corporations. There is no constitutional provision limiting the number of municipal corporations or special taxing districts which the legislature, in its wisdom or its policy, may see fit to create. The constitutional provision limiting the debt of a municipal corporation fixed no such limitation. Such matter is left for the legislature to determine in exercising its constitutional part of the governmental powers. This court has no right to pass upon the wisdom of the legislative act.

The appellant cites the case of *Rappaport* v. *Dept. of Public Health* (1949), 227 Ind. 508, 87 N. E. 2d 77. In that case an Act creating a Department of Health and Hospitals with certain corporate functions covering the same geographical limits of the City of Indianapolis was declared unconstitutional.

There is no issue raised here as to the authority of the legislature to create additional municipal corporations covering the same geographical area with separate debt limits for the alleged purpose of avoiding the constitutional provision in question. Without commenting upon this principle announced in the Rappaport case, we point out a distinction which makes that case not applicable here. That opinion states, at pp. 521-22:

" . ∵ . The benefits arising from the provisions of the act of 1945 as amended in 1947 are not special and are not of the type ordinarily financed by assessments upon property specially benefited. They are general and the reasons for holding indebtedness for local improvements not an indebtedness of the township in that case, does not apply here. Roads and streets have through the years been thought of and considered as local improvements properly paid for by special assessments for the purpose. Hospitals, on the other hand, have through the years been thought of as city-wide institutions and their establishment and maintenance have been among the general functions of local government paid for out of general taxes."

The opinion further says that local public improvement districts with authority to create indebtedness and pay for same with revenue levied on the special benefits are not violative of the constitutional provision in question. *Board of Com'rs, etc.* v. *Harrell et al.* (1897), 147 Ind. 500, 46 N. E. 124; *Cerajewski* v. *McVey et al.* (1947), 225 Ind. 67, 72 N. E. 2d 650. Here we have a district created for local public improvement, particularly benefiting the land within the district. We have a method of long standing in this state presented for raising revenue to pay for the indebtedness which is based upon the benefits ratably received by the land.

The primary objects as set forth in the proceedings before us are that of drainage and sewage disposal. In the case of *Dept. of Pub. Sanitation* v. *Solan* (1951), 229 Ind. 228, 97 N. E. 2d 495, we considered such matters to be one of "essential local public improvement."

In *Archer, Jr., etc. et al.* v. *City of Indpls., etc. et al. supra,* we held an agency similar to the Conservancy

District here was not a municipal corporation, since the tax authorized to be levied by the Indianapolis Sanitary District was based upon special benefits received by property owners for local public improvement. We stated at p. 648:

" . . . . The special tax which is authorized to be levied upon property within the territorial limits of said sanitary district is declared to be and constitutes the amount of benefits resulting to said property. The bonds are payable only out of a special tax levied upon the property in said district, and the special taxes so collected must be kept in a special fund and applied only to the retirement of said bonds. It would not seem from a reading of the law that the Legislature intended to create a separate corporate entity."

The Ben Davis Conservancy District, as other special taxing districts created for local public improvement, is not a municipal corporation within the meaning of, and its indebtedness does not fall within the limits of, Article 13, Section 1 of the Indiana Constitution.

The appellant further says:

"The notice by publication provided under the terms of Chapter 308 of the Acts of the Indiana General Assembly of 1957, and the notice provided in each of the steps creating the Ben Davis Conservancy District and for each of the steps taken by the Board of Directors is insufficient to comply with the due process requirements of the Fourteenth Amendment to the United States Constitution."

Insofar as this is an attack made upon the proceedings to create the Ben Davis Conservancy District under the unconstitutional Act of 1947, what we have said previously concerning the *de facto* character of the district is applicable here. No question on that point was raised in those proceedings

when the judgment was entered establishing the district. All such questions which could have been adjudicated within the issues are presumed finally determined or waived by the parties thereto. *Hammond Pure Ice & Coal Co.* v. *Heitman* (1943), 221 Ind. 352, 47 N. E. 2d 309.

We recognize there are certain limitations and qualifications in matters pertaining to res adjudicata. However, they do not apply in this case for the further reason that the curative section of the Act of 1957 has the effect of the adoption by the legislature of those areas as conservancy districts as fixed or defined by the proceedings under the Act of 1947.

The legislature has the power to directly create, fix and define public improvement districts for drainage, roads and other like improvements. When the legislature acts within the scope of its power, no notice of any kind is necessary for such legislation under the Constitution. The General Assembly of 1957 saw fit to declare such areas, which were the subject of proceedings under the Act of 1947, legally established local conservancy districts, subject, however, to further proceedings under the Act of 1957. This was within the power of the legislature, although it could not thereby create a "new and novel court" or do any other unconstitutional act. It did not attempt to go that far in the curative section of the Act of 1957 and did not thereby violate any constitutional provision.

Where the legislature does not see fit to directly establish by legislation a district or area for public improvement, but provides the procedure by which such areas may be established, those persons affected thereby are entitled to notice and to be heard before their rights are adjudicated under due process. Just what constitutes adequate notice is a

separate question. *Board of Commissioners* v. *Falk* (1943), 221 Ind. 376, 47 N. E. 2d 320, 145 A. L. R. 1190; *Chesebro* v. *Los Angeles Co. Flood Control Dist.* (1939), 306 U. S. 459, 83 L. Ed. 921, 59 S. Ct. 622; *Fallbrook Irrigation District* v. *Bradley* (1896), 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369; Annotations, 145 A. L. R. 1196 and 84 A. L. R. 1098.

We are concerned at this point with the provisions for notice provided under the Act of 1957. It provides:

"27-1519. Notice to owner, lessee or agent—Proof of service.—The petitioner or petitioners shall give the owner or lessee of each tract of land described in the petition, who is a resident of the county or counties in which such land is situated, and the resident agent of any corporation, including but not limited to a railroad corporation, to be affected by the proposed work, notice thereof by serving upon such owner, or lessee, personal or corporate, a written or printed notice describing said work proposed, the fact of the filing and pendency of such petition, and when the same shall be docketed, which notice may be served by any petitioner, or by any person on behalf of him, by delivering a copy to the owner or lessee, personal or corporate, to be notified; or by leaving such copy at his last and usual place of residence, or its place of business. Proof of service shall be made by affidavit of persons making such service. Further notice of the filing, pendency, and the time fixed for docketing of the petition shall be given to all owners by posting written or printed notices thereof at three [3] public places in each township wherein the lands described in the petition are situated. In addition, one copy of the notice shall be sent by registered mail to each freeholder, not actually domiciled within the area of the proposed district. The address as set forth in the office of the county treasurer shall govern in determining whether the freeholder is domiciled within the proposed district. If the freeholder is a corporation, the notice shall be sent to its principal place of business. If the land is held in joint title notice to

one [1] of the owners shall be sufficient; and if one [1] of the joint owners is domiciled within the proposed district, no notice need be mailed. [Acts 1957, ch. 308, §19, p. 851.]

"27-1520. Notice of hearing on petition.—Notice of the hearing on the petition shall serve as notice of all further proceedings in connection with the conservancy district. [Acts 1957, ch. 308, §20, p. 851.]"

The Act further states that after the proceedings have reached the court, when the hearings are set upon the various reports filed, including the final plan and appraisers' report of benefits and damages:

"The court shall order notice for this hearing as it deems necessary, but at least one [1] publication shall be made in one [1] newspaper of general circulation within each of the counties containing land within the proposed district." [Acts 1957, ch. 308, §33, p. 851.]

A thirty-day period is granted within which objections or exceptions may be made by any person affected.

The adequacy of the initial notice provided for in §27-1519 upon the institution of the proceedings for the establishment of a conservancy district cannot be questioned. It is designed to give personal service and actual notice to all persons affected where reasonably possible under the circumstances. Freeholders not actually domiciled in the area are given notice by registered mail as an extra precaution. Appellees urge upon us that the provisions of the above section for the notice in the initial steps are sufficient to cover all subsequent steps in the proceedings; that once a party is in court, no subsequent notice is necessary to retain jurisdiction during the proceedings. *Board of Commissioners* v. *Falk* (1943), 221 Ind. 376, 47 N. E. 2d 320, 145 A. L. R. 1190; 5 I. L.

E., Constitutional Law, Sec. 211, p. 515. As a general rule this principle is true, but there are certain qualifications which, by necessity, follow. If the proceedings are so modified or amended that their character and the relief demanded are substantially changed, affected parties should be entitled to notice and to be heard; otherwise the original notice might lead to deceptive practices virtually depriving interested parties of substantial rights without notice. It is also true where proceedings such as maintenance, alteration and improvement of certain projects may continue or go on indefinitely with no anticipated final termination of the proceedings, that notice and an opportunity to be heard upon new subject matters should be granted parties affected from time to time. The Act in question provides for such contingencies.

The Conservancy Act of 1957 provides for notice by publication and hearing from time to time in the fixing of the annual levy and the maintenance and upkeep of the district. When a hearing is had before the court on any matter affecting the rights of land owners within the Conservancy District, the court is authorized to direct that such notice be given for the hearing "as it deems necessary," and the statute additionally requires one publication in a newspaper in each of the counties containing land within the district. This leaves to the judgment of the court in each case what it believes to be under the circumstances adequate notice. Where the court is given authority to fix and direct that a reasonable notice be given, a statute cannot be held unconstitutional on the ground that it does not afford due process in that respect. If there is an insufficiency of notice in any particular case, due process may be lacking in that particular procedure by reason of the court's failure to order sufficient notice,

but the Act as a whole does not thereby become unconstitutional. *Law* v. *Johnston* (1889), 118 Ind. 261, 20 N. E. 745; 16A, C. J. S., Constitutional Law, Sec. 619, p. 804.

Judgment affirmed.

Emmert and Landis, JJ., concur.

Achor, J., concurs in result with opinion.

Bobbitt, C. J., concurs in part and dissents in part with opinion.

### Concurring Opinion

ACHOR, J.—I concur in the majority opinion insofar as it confirms the constitutionality of the Conservancy Act of Indiana [Acts 1957, ch. 308, p. 851, being §§27-1501—27-1599, Burns' 1957 Cum. Supp.] and sustains the validity of the Ben Davis Conservancy District under that Act.

### Concurring in Part and Dissenting in Part

BOBBITT, C. J.—I concur in the result reached by the majority opinion, but dissent from that part of the opinion relating to the judgment of the Marion Circuit Court, entered on March 10, 1950, for the following reasons:

(1) In my opinion the proceeding in which the Conservancy District herein was created does not acquire its validity from the judgment of the Marion Circuit Court entered on March 10, 1950, pursuant to the provisions of the 1947 Conservancy Act, but such proceeding is validated by the Acts of 1957, ch. 308, §100.

The legislature had the power to create Conservancy Districts consisting of areas which were the subject of proceedings had under ch. 239 of the Acts of 1947,

within its constitutional limitations, as provided by §100 of ch. 308, *supra.*

(2) *It is not necessary to a decision of the case at bar* to determine the validity and effect of the judgment of the Marion Circuit Court entered on March 10, 1950, establishing the "Ben Davis Conservancy District" pursuant to the provisions of the 1947 Conservancy Act.

(3) If it were necessary to pass upon the validity of such judgment, the case of *Oviatt* v. *Behme* (1958), 238 Ind. 69, 147 N. E. 2d 897, and other authorities relied upon by the majority, lend no support to *dicta* in the majority opinion which would legalize the establishment of the Conservancy District herein upon the ground that no appeal was taken from the order of the Marion Circuit Court establishing such District under the 1947 Act.

In footnote 10 in *State, P. R. R. Co. et al.* v. *Iroq. Cons. Dist. Ct. et al.* (1956), 235 Ind. 353, 367, 133 N. E. 2d 848, we mentioned that two issues of bonds had already been sold to the public by the directors of the Conservancy Districts created and established under the 1947 law. However, we there said, "The question of the validity of these bonds is not an issue in this case, nor do we attempt to incorporate it into those here presented."

The bonds in those two proceedings, if valid, acquired their legality not because no appeal was taken from the judgments establishing the Conservancy District which had sold the bonds, but from the fact that the directors in each of such Districts were *de facto* officers whose acts were valid in respect to the public whom they represented and to third persons—the purchasers of the bonds—with whom they dealt officially. *Parker et al.* v. *The State ex rel. Powell* (1892), 133 Ind. 178, 200, 32 N. E. 836, 18 L. R. A. 567; *Felker* v.

*Caldwell* (1919), 188 Ind. 364, 371, 123 N. E. 794; *City of Michigan City* v. *Brossman* (1938), 105 Ind. App. 259, 11 N. E. 2d 538. The above cases do not attempt to validate an unconstitutional Act because no appeal was taken from the judgments in the trial courts. Nor do they do violence to the general rule, that an unconstitutional Act is void *ab initio*. See: *State ex rel. Beaman* v. *C. Ct. Pike Co.; Gibson Co.* (1951), 229 Ind. 190, 193, 96 N. E. 2d 671, and cases there cited.

The directors appointed under the March 10, 1950, order of the Marion Circuit Court sold no bonds before the 1947 Act was declared unconstitutional. If the 1957 Act had not been passed, could these directors have proceeded to sell bonds after the Act under which they were appointed was declared unconstitutional, simply because no appeal was taken from the order appointing them? The question furnishes its own answer.

It seems crystal clear to me that the only source of the legal existence of the Conservancy District herein is §§3 and 100 of ch. 308 of the Acts of 1957.

(4) What the petitioners are seeking is the validation of the proceedings which they instituted under the provisions of the 1957 Act. The judgment of the Marion Circuit Court entered on March 10, 1950, could not under any theory of law accomplish this purpose.

Not only was no question raised pertaining to the 1950 judgment of the Marion Circuit Court, but both parties specifically recognized that the sole question here presented is the validity of the proceedings in the Marion Circuit Court *under the provisions* of the 1957 Act.

Appellant recognizes this fact at pages 36 and 37 of his brief, and I quote:

"The Appellee takes the position that the Marion Circuit Court in finding that the Ben Davis Con-

servancy District was created in accordance with Chapter 308 of the Acts of the Indiana General Assembly of 1957 (Tr. p. 30) and in approving the final plan (Tr. p. 56) and in approving the appraisers' report (Tr. p. 53) by implication found the 1957 Conservancy Act constitutional; that the time for appeal from these actions having passed, the issue of constitutionality could not be raised in this action. The Appellee cited as authority State ex rel. Piel v. Arkansas Construction Co. (1929), 201 Ind. 259, 167 N. E. 526. The position of Appellee was based upon the principle of law found in that case, and stated on page 263 thereof, as follows:

"'It is true that where a statute is unconstitutional it is as though the statute never existed, but where a court of competent jurisdiction before the statute has been effectively declared unconstitutional, has rendered a judgment which is not appealed from, that judgment is binding, upon the principle which fixes the conclusiveness of a judgment. "Where a statute conferring jurisdiction is held unconstitutional, such decision will have no retroactive effect . . . and where proceedings have been regularly had under the law as it existed before such decision they will not be disturbed."'

"An examination of the above quotation will indicate four (4) reasons for the failure of the quoted principle of law to apply to the present case:

"1. The Appellant has not requested in his Petition that the order of the Court have a retroactive effect.

"2. The issue of unconstitutionality of the 1957 Act has never been raised and decided by the lower court.

"3. The attack upon the constitutionality of the 1957 Act is a direct attack and not a collateral attack upon any previous decision of the lower Court."

That the constitutionality of the 1957 Act is the sole and only question here presented is recognized by appellee at page 31 of its brief, and I quote:

"The Marion Circuit Court by an order of the 28th day of May, 1957, found the Ben Davis Conservancy District to be an area established in accordance with Chapter 308 of the Acts of the Indiana General Assembly of 1957. The Court in the same entry found the appointment of the Directors of the District, the designation of the principal place of business, the appointment of appraisers and the filing of the appraiser's reports to be valid acts.

"The validity of these acts rests upon the following:

"1. The Constitutionality of Chapter 308 of Acts of the Indiana General Assembly of 1957.

"2. The conformance of the Acts and the recognition of the Ben Davis Conservancy District with Chapter 308 of the 1957 Acts."

NOTE.—Reported in 153 N. E. 2d 125.