**In re PETITION FOR the ESTAB-LISHMENT OF the MILLPOND CONSERVANCY DISTRICT.**

No. 76A03–0711–CV–536.

Court of Appeals of Indiana.

July 10, 2008.

Joshua A. Burkhardt, Beers Mallers Backs & Salin, LLP, Fort Wayne, IN, Attorney for Appellant.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants–Remonstrators, Ralph Holman and Wayne Crowl (Remonstrators), appeal the trial court's order establishing

the Millpond Conservancy District (District).[1]

We affirm.

### ISSUE

Remonstrators present a single issue on appeal, which we restate as: Whether the trial court erred in establishing the District because one part of the proposed project underlying the District—the construction of a road and a bridge—does not appear in Indiana Code section 14–33–1–1, the statute that lists the permissible purposes for the establishment of a conservancy district.[2]

### FACTS AND PROCEDURAL HISTORY

■ A conservancy district is a special taxing district created for local public improvement. *Martin v. Ben Davis Conservancy Dist.*, 238 Ind. 502, 523, 153 N.E.2d 125, 135 (1958). "The Indiana Conservancy Act allows for 'the creation of conservancy districts for the purpose of controlling stream pollution, drainage, irrigation, water supply and other natural resources. It creates a board of directors and permits the levying of a tax and assessment for the benefits and improvements to the real estate within the district.'" *Clear Creek Conservancy Dist. v. Kirkbride*, 743 N.E.2d 1116, 1117 (Ind.2001) (quoting *Martin*, 238 Ind. at 507, 153 N.E.2d at 128).

The push for the establishment of the Millpond Conservancy District dates back to 1996, but the facts relevant to this appeal are relatively few. The Town of Hamilton, Indiana (Town), which initiated the establishment of the District, explained the need for the District as follows:

[T]he [S]tate has categorized the north dam and spillway on the east side of Hamilton Lake as a "high hazard" dam. The existing dam nearly collapsed when it was over-topped in 1996 due to a significant rain event. Since that time the Indiana Department of Natural Resources [ (DNR) ] and the Indiana Department of Transportation [ (INDOT) ] have been developing the "Hamilton Lake Dam and [State Road 1 and State Road 427] Improvements" project, the purpose of which is to rehabilitate the dam and spillway system so that it is able to convey the necessary outflow from Hamilton Lake to prevent a future over-topping event. The new dam and spillway and associated construction, including a new bridge and road, is expected to cost approximately $4,210,733, for which the proposed district will be responsible for approximately $600,000. The failure of the dam due to a future significant rain event would likely result in the total loss of Hamilton Lake. The loss of Hamilton Lake as a water body would have a devastating economic and social consequence to [the Town] and all the freeholders in the immediate watershed of the proposed district.

(Appellants' App. p. 22). An engineering firm provided the following revised cost

---

1. We note that Remonstrators' counsel has failed to include a copy of the order appealed from in his brief, as required by Indiana Appellate Rule 46(A)(10).

2. Remonstrators also make a brief argument that the trial court erred by establishing the District before considering and ruling on certain objections from Remonstrators. However, Remonstrators cite no authority, statutory or otherwise, for the proposition that the trial court must make a specific ruling on every objection lodged. Because Remonstrators made their objections very clear to the trial court on several occasions, both in writing and in open court, we can safely say that the trial court found the objections to be without merit when it granted the Town's petition to establish the District.

estimate for the dam rehabilitation and bridge and road construction as follows:

| | |
|---|---|
| Bridge and Roadway Approach | $1,374,105 |
| Spillway and North Dam | $1,385,300 |
| South Dam | $ 194,430 |
| Additional Items | $ 876,500 |
| 15% Contingency . | $ 523,295 |
| Total Cost Estimate | $4,353,630 |

(Appellants' App. p. 464).

On January 26, 2005, the Town, acting on an ordinance adopted by its town council, filed a petition for the establishment of the District in order to pay for the project. In its petition, the Town listed the following two statutory purposes for the establishment of the District:

(a) Developing forests, wildlife areas, parks and recreational facilities where feasible in connection with beneficial water management;

(b) Operation, maintenance and improvement of

(i) any work of improvement for water based recreational purposes, or

(ii) other work o[f] improvement that could have been built for any other purpose authorized by IC 14–33–1–1[.]

(Appellants' App. p. 21). On May 31, 2005, the trial court determined that the petition was complete as to form and content and forwarded it to the Natural Resources Commission (Commission), as required by statute. *See* Ind.Code § 14–33–2–17 ("If a court determines that a petition conforms to the requirements, the court shall enter an order referring the petition to the [C]ommission.").

On August 17, 2005, the Commission held a hearing on the Town's petition. During the hearing, Dale Gick, an engineer with the Division of Engineering of the DNR, explained that the estimate for the cost of the entire project is around $4.2 million; that there is "roughly $1 million that is going into the highway bridge"; and that the INDOT "is picking up 100%

of the costs related to the highway bridge." (Appellants' App. p. 51). Furthermore, after the hearing, Michael Neyer, director of the Division of Water of the DNR, submitted a memorandum explaining that "[a]dditional State funding for this project has been secured from [INDOT] to pay for the portion of the project associated with the replacement of the [State Road] 1/427 culvert." (Appellants' App. p. 63).

On November 15, 2005, the Commission filed its report with the trial court. In its report, the Commission found that the Town had failed to offer sufficient evidence to support its first proposed purpose, that is, "Developing Forests, Wildlife Areas, Parks and Recreational Facilities Where Feasible in Connection with Beneficial Water Management." (Appellants' App. pp. 70–71). However, the Commission found that the evidence supported the Town's second proposed purpose: "Operation, Maintenance and Improvement of Any Work of Improvement for Water Based Recreational Purposes or Other Work o[f] Improvement that Could Have Been Buil[t] for Any Other Purpose Authorized by IC 14–33–1–1." (Appellants' App. pp. 72–83). In addition, the Commission noted in its Findings and Recommendations that "[INDOT] provided additional state funding to pay for the portion of the project associated with the replacement of the State Road 1 and 427 bridge." (Appellants' App. p. 79).

On February 24, 2006, in response to the Commission's report, the Town amended its petition to remove the first proposed purpose, leaving only the second proposed purpose. On September 14, 2007, after many more hearings and written submissions and over numerous objections from several parties, including Remonstrators, the trial court entered an order establish-

ing the District based on the Commission's report.

Remonstrators now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

■■■ Before turning to Remonstrators' argument on appeal, we note that the Town has not filed a brief. When the appellee has failed to submit an answer brief, we need not undertake the burden of developing an argument on the appellee's behalf. *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind.2006). Rather, we will reverse the trial court's judgment if the appellant presents a case of *prima facie* error. *Id. Prima facie* error in this context is defined as, "at first sight, on first appearance, or on the face of it." *Id.* (citing *Santana v. Santana,* 708 N.E.2d 886, 887 (Ind.Ct.App.1999)). Where an appellant is unable to meet this burden, we will affirm. *Id.*

■■■ Remonstrators argue that the trial court erred in establishing the District because approximately one-third of the estimated costs for the project are for the construction of a road and bridge, a purpose they contend is not permitted under Indiana Code section 14–33–1–1. Indiana Code section 14–33–1–1(a) provides that a conservancy district may be established for any of the following purposes:

(1) Flood prevention and control.

(2) Improving drainage.

(3) Providing for irrigation.

(4) Providing water supply, including treatment and distribution, for domestic, industrial, and public use.

(5) Providing for the collection, treatment, and disposal of sewage and other liquid wastes.

(6) Developing forests, wildlife areas, parks, and recreational facilities if

feasible in connection with beneficial water management.

(7) Preventing the loss of topsoil from injurious water erosion.

(8) Storage of water for augmentation of stream flow.

(9) Operation, maintenance, and improvement of:

    (A) a work of improvement for water based recreational purposes; or

    (B) other work of improvement that could have been built for any other purposes authorized by this section.

In this case, the Town's amended petition listed only the last purpose, subsection (a)(9). Whether the construction of a road and/or bridge could, under any circumstances, fall under subsection (a)(9) or any other subsection is no doubt an important question worthy of debate. For the reasons discussed below, however, we need not address that question.

Remonstrators argue that "[w]hile it may be proper for a conservancy district to assume responsibility to maintain and repair a dam for flood prevention and control, it is not appropriate for a conservancy district to tax property owners for bridge and road construction." (Appellants' Br. p. 13). Remonstrators' essential contention in this appeal is that they and the other freeholders in the proposed District should not have to pay for bridge and road construction. But according to the Commission's report to the trial court, they will not have to pay for that part of the proposed project. Both Dale Gick, an engineer with the Division of Engineering of the DNR, and Michael Neyer, director of the Division of Water of the DNR, told the Commission that INDOT had agreed to pay the portion of the costs related to the construction of the bridge and road. The Commission included this fact in the Findings and Recommendations section of its report to the trial court. Indiana Code

section 14–33–2–23 provides that "[t]he factfinding report of the [C]ommission on the proposed district is *prima facie* evidence of the facts stated in the report in all subsequent proceedings."

In short, the trial court was entitled to rely upon the Commission's findings unless Remonstrators presented some evidence to rebut those findings. On appeal, Remonstrators do not claim that they presented any evidence to the trial court that would serve to rebut the Commission's finding that INDOT will pay the portion of the cost relating to the construction of the bridge and road, nor do they claim that they have any such evidence. Because the evidence before the trial court shows that the construction of the bridge and road will not be funded by the District, we need not determine whether that portion of the project is a permissible purpose for the establishment of a conservancy district under Indiana Code section 14–33–1–1. We conclude that Remonstrators have failed to present a case of *prima facie* error. *See Trinity Homes, LLC,* 848 N.E.2d at 1068.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in establishing the Millpond Conservancy District.

Affirmed.

BAKER, C.J., and ROBB, J., concur.